IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J. MICHAEL MORRIS, Trustee,

    Appellant,

v.      Case No. 15-1024-JTM

ARK VALLEY CREDIT UNION and
JEFFREY KENT GRACY,

    Appellees.


**MEMORANDUM AND ORDER**

Appellant J. Michael Morris ("trustee") is the trustee in a Chapter 7 bankruptcy filed by Jeffrey Kent Gracy ("debtor"). Trustee brought an adversarial proceeding in debtor's case against appellee Arkansas Valley Credit Union ("AVCU") to assert his avoidance powers pursuant to 11 U.S.C. § 544(a) against an alleged lien held by AVCU in debtor's mobile home. The bankruptcy court ruled against trustee, finding that the lien he sought to avoid had not attached to the mobile home and therefore could not be avoided. The issue before the court on appeal is whether the AVCU mortgage created a lien that attached to debtor's mobile home. As explained below, the bankruptcy court's decision is vacated and the case is remanded for further consideration.

**I. Background**

In the mid-1990s, debtor purchased a parcel of land commonly known as 617 W. Avenue G in Caldwell, Kansas, (the "Caldwell realty") onto which he moved a mobile

home. Debtor and his wife lived in the home; she has since passed away, but he continues to live there. He paid off the home's purchase money loan in 2007.

In 2009, debtor borrowed $21,000 from AVCU on a home equity line of credit for personal bills and expenses, secured by a 15-year revolving credit mortgage granted on the Caldwell realty. The mortgage did not note the presence of the manufactured home on the property.

In January 2010, debtor obtained a second line of credit from AVCU in the amount of $26,000 and executed another revolving credit mortgage against the Caldwell realty. The 2010 mortgage had a 20-year term, but its collateral description was identical to the 2009 mortgage. The 2010 mortgage likewise did not reference the mobile home on the property.

Debtor believed that both mortgages had granted a lien on the land, the manufactured home, and a detached garage on the property.

Mary Gillette, AVCU's manager at the time the mortgages issued, dealt with debtor on the loans in question. She testified that AVCU policy required that mobile homes offered as security be set on a permanent foundation and their certificate of title eliminated pursuant to K.S.A. § 58-4214. According to Gillette, AVCU employees received training and documentation regarding the mobile home policy. AVCU did not obtain an appraisal on the property to support either mortgage, but relied on the 2008 Sumner County real estate tax valuation in making the 2009 loan. Before making the 2010 loan, AVCU obtained a title insurance commitment from Security 1st Title to ensure that no other liens had been placed against the Caldwell realty. Neither the tax

valuation nor the title insurance certificate references a manufactured home or any other improvement to the realty. However, Gillette testified that AVCU employees were trained to take a mortgage "on everything" and that she intended to obtain a mortgage on debtor's property as a whole, including the manufactured home.

Debtor filed a Chapter 7 bankruptcy petition on July 25, 2013. He claimed the Caldwell realty exempt as his homestead and did not schedule the manufactured home as personal property on Schedule B.

The trustee filed this adversary proceeding to avoid AVCU's alleged lien on the mobile home under 11 U.S.C. § 544(a) as unperfected because the lien is not noted on the home's certificate of title as required by K.S.A. § 58-4204. AVCU argued that there was no lien for trustee to avoid because it never took a lien on the mobile home.

The bankruptcy court agreed with AVCU, holding that the mortgage did not sufficiently describe the home as collateral pursuant to K.S.A. § 84-9-108(e). Accordingly, the bankruptcy court found that a lien had not attached to the manufactured home.

The bankruptcy court reasoned as follows. The Kansas Uniform Commercial Code, K.S.A. §§ 84-9-101 to 84-9-809, governs the security interest in question because the manufactured home is personal property. A manufactured home purchased primarily for personal use is a consumer good, and the security interest is therefore a consumer transaction. Section 84-9-108(e) specifies that consumer-transaction security agreements must describe the collateral by more than type alone. The mortgage does not specifically reference the mobile home. Therefore, the home could only be collateral

3

as a "fixture" under the mortgage's habendum clause, but "fixture" is only a type of collateral. Therefore, the mortgage insufficiently describes the mobile home as collateral because it describes it only by type. The bankruptcy court thus ruled against trustee, finding that he could not avoid a lien that had not attached. The trustee timely filed this appeal.

## II. Legal Standard

This case is before the court on appeal under 28 U.S.C. §158(a). Appellant seeks review of the bankruptcy court's determination that a security interest did not attach to the manufactured home as a matter of law. Questions of law are reviewed *de novo*. *Payne v. Clarenton Nat'l Ins. Co.*, 220 B.R. 1005, 1012 (B.A.P. 10th Cir. 1998); 28 U.S.C. § 1334(a).

## III. Analysis

The trustee in a Chapter 7 case may avoid a lien that is attached but unsecured and preserve it for the benefit of the estate under 11 U.S.C. § 544(a). The court must therefore determine whether AVCU's mortgage created a lien that attached to the debtor's manufactured home. The answer turns on the interplay of Kansas property law, the Kansas Manufactured Home Act ("KMHA"), and Article 9 of the Uniform Commercial Code.

Mobile homes are personal property under Kansas law, and may be fixtures if they become sufficiently related to real property. K.S.A. §§ 58-4204(a), 58-4214. Article 9 of the Kansas Uniform Commercial Code, K.S.A. §§ 84-9-101 to 84-9-809, governs security interests in personal property and fixtures. K.S.A. § 84-9-109(a)(1). A security

interest attaches under Article 9 when it becomes enforceable; it becomes enforceable if: (1) value has been given, (2) the debtor has rights in the collateral, and (3) the debtor authenticates a security agreement that describes the collateral. K.S.A. § 84-9-203.

Here, it is not disputed that AVCU gave value in the form of a loan and debtor had rights in the collateral by ownership of the manufactured home. Nor is it disputed that the mortgage is a sufficient security agreement under Article 9. K.S.A. §§ 84-9-102(a)(73), 84-9-201(b)(35); *see In re Brooks*, 452 B.R. 809, 813 (Bankr. D. Kan. 2011). The dispute here is whether the mortgage describes the manufactured home as collateral.

Under the Kansas Uniform Commercial Code, mobile homes are "goods." K.S.A. § 84-9-102. Goods "used or bought for use primarily for personal, family, or household purposes," such as debtor's mobile home, are "consumer goods." K.S.A. § 84-9-102(a)(23). Transactions secured by consumer goods are "consumer transactions." K.S.A. § 84-9-102(26). The collateral in a consumer transaction must be described by more than type alone; otherwise, the security interest does not attach to the consumer good. K.S.A. § 84-9-108(e).

Here, the mobile home is not specifically identified in the AVCU mortgages. However, mobile homes may become fixtures under certain circumstances. *See* K.S.A. § 58-4214; *Beneficial Fin. Co. of Kan., Inc. v. Schroeder*, 737 P.2d 52 (Kan. Ct. App. 1987). Accordingly, trustee argues that the term "fixtures" in the AVCU mortgages' habendum clauses identify the mobile home as collateral. AVCU argues, and the bankruptcy court held, that "fixture" is a type of collateral and is thus insufficient to

5

identify the manufactured home as collateral in the mortgages under K.S.A. § 84-9-108(e).

Thus, the court must determine (1) whether the term "fixtures" in the mortgage sufficiently describes a mobile home that is a fixture to the realty in question as collateral under K.S.A. § 84-9-108(e) and, if so, (2) whether debtor's mobile home is a fixture under Kansas law.

**A. The term "fixture" in a mortgage's habendum clause sufficiently describes a mobile home as collateral if it is a fixture to the realty described in the mortgage.**

AVCU's mortgages refer to both "fixtures" and "improvements." Under Kansas law, "fixture" and "improvement" are interchangeable realty terms. *City of Wichita v. Denton*, 294 P.3d 207, 258 (Kan. 2013). The court therefore refers solely to "fixture" for the sake of simplicity. "Fixture" is a type of consumer-good collateral and therefore must be described by more than type alone under K.S.A. § 84-9-108(e).

> Subsection (e) requires greater specificity of description in order to prevent debtors from inadvertently encumbering certain property. Subsection (e) requires that a description by defined "type" of collateral alone . . . in a consumer transaction . . . is not sufficient. For example, "all existing and after-acquired investment property" or "all existing and after-acquired security entitlements," without more, would be insufficient in a consumer transaction to describe a security entitlement, securities account, or commodity account. The reference to "*only* by type" in subsection (e) means that a description is sufficient if it satisfies subsection (a) and contains a descriptive component beyond the "type" alone.

K.S.A. § 84-9-108, UCC cmt. 5 (emphasis in original). Further,

> [t]he purpose of requiring a description of collateral in a security agreement under Section 9-203 is evidentiary. The test of sufficiency of a description under this section . . . is that the description do the job assigned to it: make possible the identification of the collateral described.

6

> This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called "serial number" test).

K.S.A. § 84-9-108, UCC cmt. 2. The relevant portion of the AVCU mortgage reads as follows:

> BORROWER does hereby mortgage, grant and convey to Lender the following described property located in the County of Sumner, State of Kansas: . . . [lot numbers] which has the address of 617 W. Ave. G., Caldwell, Kansas 67022 (herein "Property Address"); TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this Mortgage . . . .

(Dkt. 4-14, at 2-3).

Here, the property description, the words "together with," and the word "fixtures" are all part of the language granting the security interest and should be read together. *Cf. First Nat'l Bank & Trust Co. of Okla. City v. Atchison Cnty. Auction Co., Inc.*, 699 P.2d 1032, 1036 (Kan. 2013). The mortgages describe a specific parcel of land and thus provide a "descriptive component beyond [fixture] alone." K.S.A. § 84-9-108, UCC cmt. 5. By way of the parcel description, the mortgage unambiguously specifies *which* fixtures are to be included as collateral: those affixed to that of the realty known as 617 W. Ave. G., Caldwell, Kansas, 67022. Such a description does "the job assigned to it" by making identification of the collateral possible: one need only be present at the parcel and observe fixtures and improvements thereon to identify the collateral. K.S.A. § 84-9-108, UCC cmt. 2. The mortgage's description of collateral by type *and* location make identification of the collateral possible such that the debtor would not inadvertently encumber *all* consumer goods he may own, nor those that may become fixtures in *any*

7

property, but only those affixed to the parcel described in the mortgage. The AVCU mortgages thus describe "fixtures" by more than type alone.

Moreover, "[a] cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistent with legal principles." *Parsons v. Biscayne Valley Investors Ltd.*, 23 Kan. App. 2d 718, 722 (1997). The language of the AVCU mortgage contract evinces intent to grant and receive a lien in all fixtures appurtenant to the described parcel, whether they are water heaters or buildings – including affixed mobile homes. Further, debtor testifies that he intended to grant a lien in the manufactured home, and Gillette testified that AVCU sought a lien in the home. The court's conclusion that the word "fixture" plus a description of the parcel in a mortgage is a sufficient description of collateral is consistent with other determinations by the bankruptcy court in this district. *See In re Moore*, No. 09-11051, 2011 WL 1100072, at *4 (Bankr. D. Kan. March 23, 2011); *In re Elder*, No. 04-5229 slip op. (Bankr. D. Kan. 2005). The AVCU mortgages therefore sufficiently describe fixtures to the Caldwell realty as collateral for the mortgage.

The remaining question is whether the subject mobile home is a fixture under Kansas law.

**B. A mobile home may become a fixture under Kansas common law.**

Under the KMHA, a mobile home is considered a fixture to the realty where it is located if it is permanently affixed thereto and its title is eliminated by pursuant to K.S.A. § 58-4214 (the "elimination statute"). Here, debtor did not eliminate the title to his mobile home. It therefore did not become a fixture under the elimination statute of

the KMHA. Trustee argues that the home could also have become a fixture under Kansas common law. The court agrees.

AVCU argues that the KMHA "elimination" provision is the exclusive means by which manufactured homes can become fixtures under Kansas law, as explained by the Tenth Circuit Bankruptcy Appeals Panel ("B.A.P.") in *In re Thomas*, 362 B.R. 478 (10th Cir. B.A.P. 2007). The KMHA does not specify whether it is the sole means of converting a manufactured home from personal property to a fixture and is subject to multiple interpretations on this point. *Compare In re Thomas*, 362 B.R. 478, *with In re Brooks*, 452 B.R. 809 (Bankr. D. Kan. 2011).

Therefore, the court must undertake to interpret the ambiguous statute by first looking "to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007). The Kansas Supreme Court has yet to rule on this issue, so the court will interpret the KMHA "according to state rules of statutory construction," *Finstuen*, 496 F.3d at 1148, and "extrapolate the true meaning of such statutes according to traditional rules of statutory construction." *Phelps v. Hamilton*, 59 F.3d 1058, 1070 (10th Cir. 1995). The court may also look to Kansas "appellate court opinions, decisions from other jurisdictions, statutes, and treatises" for guidance. *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004).

The Kansas Supreme Court holds that "statutory interpretation begins with the language selected by the legislature." *Moser v. State, Dept. of Revenue*, 213 P.3d 1061, 1064 (Kan. 2009). The court should consider a statute's ordinary meaning in the context of the

entire legislative act. *Id.* The legislature's intent should be followed if ascertainable. *Redd v. Kan. Truck Ctr.*, 239 P.3d 66, 75 (Kan. 2010). The pertinent KMHA provision reads:

> (a) Whenever a manufactured home or mobile home is permanently affixed to real property, by placement upon a permanent foundation of a type not removable intact from such real property, the manufactured home or mobile home shall be considered for all purposes an improvement to real property, if the certificate of title which has been issued or is required to be issued for such manufactured home or mobile home pursuant to K.S.A. 58-4204, and amendments thereto, is eliminated pursuant to this section. If the certificate of title has been eliminated pursuant to this section, the ownership of the manufactured home or mobile home shall be an incident of ownership of the real property where it is located under governing real property law. If the certificate of title has been eliminated pursuant to this section, a separate security interest in the manufactured home or mobile home shall not exist, and the manufactured home or mobile home shall only be subject to a lien as part of the real property where it is located.

K.S.A. § 58-4214(a). Here, the word "whenever" indicates the timing or frequency of the creation of a fixture under the statute. "Whenever" means "at any or every time that." MERRIAM-WEBSTER DICTIONARY (2015). "Shall" indicates a mandatory conclusion. *Id.* Thus, at any time or every time that a manufactured home is permanently affixed to realty and the title is eliminated, it must be treated as a fixture.[1] "At any time" or "every time" is not exclusive language. The legislature could have employed other simple combinations of words instead of "whenever" to indicate exclusivity, such as "only when" or "only if." Rather, it chose to say "at any time" or "every time." A plain reading of K.S.A. § 58-4214 thus indicates that every time the conditions are met, the

---

[1] As noted in Section III(A) *supra*, "improvement" and "fixture" are interchangeable terms in the context of Kansas property law. *Denton*, 294 P.3d at 258. Section 58-4214 should thus be read to mean that permanently affixed manufactured homes whose title has been eliminated shall be treated as an improvement or fixture.

10

home is a fixture; it does *not* plainly read that a manufactured home can only become a fixture if the conditions are met. The ordinary meaning of the statute does not exclude common law as a means of converting a manufactured home into a fixture; it merely provides a set of conditions under which one can guarantee that a mobile home will be treated as a fixture.

The statute's relevant context is the entire KMHA, which also does not indicate that it provides the exclusive means by which a mobile home can become a fixture. The KMHA specifies that mobile homes are not subject to the laws applicable to vehicles when they are not on public roads, establishes special title provisions that apply to mobile homes, and sets forth regulation of the manufacture and sale of such homes. K.S.A. §§ 58-4201 to 4213, 4217-4227. Thus, the KMHA's scope is not so extensive that it can be clearly construed to occupy the field of mobile home law in Kansas. Instead, it specifies that mobile homes are personal property, indicating that personal property common law applies where the KMHA does not intervene or contradict. K.S.A. § 58-4204. The KMHA is devoid of language indicating that it precludes common law treatment of mobile homes – unlike motor vehicle laws, which the KMHA specifies do not apply to manufactured homes. The KMHA does not exclude the application of common-law principles to mobile homes.

In 2002, sections 4214 and 4215 were added by amendment. Section 4214 is the elimination statute, and section 4215 facilitates the elimination of such titles. The Kansas legislature noted, regarding § 4214:

> HB 2723 concerns manufactured mobile homes permanently affixed to real property. The bill allows the owner of such a home to apply to the Division of Vehicles to eliminate the certificate of title on the home. The approved application is recorded in the office of the register of deeds and, upon being recorded, the certificate of title is considered eliminated. Once the certificate of title is eliminated, the ownership of the home is an incident of ownership of the real property to which it is affixed and governed by real property law. Title insurers, then, will see the home as real property and eligible for title insurance coverage.

Kansas Summary of Legislation, 2002 Reg. Sess. H.B. 2723. The legislative history does not indicate intent to treat manufactured homes as fixtures only under the new KMHA provision. The context and legislative history of section 4214 does not indicate legislative intent to exclude the common law of fixtures from mobile homes.

Case law on this issue is limited to bankruptcy court opinions and one decision from the Tenth Circuit B.A.P. The United States Bankruptcy Court, District of Kansas, has recognized a lien on a manufactured home as a common law fixture on at least three occasions.[2] In contrast, the B.A.P. has treated the KMHA as the exclusive means for converting a manufactured home into a fixture. *In re Thomas*, 362 B.R. 478, 485-86 (B.A.P. 10th Cir. 2007). The *Thomas* court determined that the plain language of the KMHA indicates that manufactured homes are personal property unless the elimination statute is fulfilled. *Id.* at 486. The B.A.P. did not undertake an analysis of the language, focusing its analysis on the specific procedure of title elimination. It contrasted the uncertainty of the common law status of "fixture" with the certainty of compliance with the elimination statute. The court concluded that the provision of a clear procedure and

---

[2] *See In re Moore*, No. 09-5157, 2011 WL 1100072, at *3 (Bankr. D. Kan. Mar. 23, 2011); *In re Brooks*, 452 B.R. 809, 813 (Bankr. D. Kan. 2011); *In re Elder*, No. 04-5229, at 12-13 (Bankr. D. Kan. Nov. 7, 2005).

the certainty attendant to compliance therewith indicate an intent to exclude the common law of fixtures from manufactured homes.

However, the court agrees with previous bankruptcy court decisions.[3] Absent clear legislative intent to treat mobile homes as fixtures solely under the KMHA, or until the Kansas Supreme Court indicates the same, the court will defer to the Kansas legislature's ability to draft an exclusivity provision. The court reads § 4214 as a safe harbor provision and acknowledges, in accord with the previous bankruptcy court decisions, that mobile homes may be treated as fixtures under Kansas common law.

Accordingly, the AVCU mortgage may have created a security interest that attached to the manufactured home if the home had become a fixture to the realty under Kansas common law.

IT IS ACCORDINGLY ORDERED this 25th day of August, 2015, that the bankruptcy court's decision is VACATED and remanded for further proceedings consistent with this opinion.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

[3] Decision of the B.A.P. are not binding on this court. *Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007); *In re Barakat*, 173 B.R. 672 (Bankr. C.D. Cal. 1994); Precedential Effect of Bankruptcy court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions, 8 A.L.R. Fed. 2d at 168-69.